IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-41447

---

THOMAS A. COLEMAN, II, on behalf of himself and
all similarly situated persons and entities; ELLIS HARPER
YOUNG, on behalf of himself and all similarly situated
persons and entities,

                                           Plaintiffs-Appellants,

versus

AMERICAN ELECTRIC POWER COMPANY, INC.;
SOUTHWESTERN ELECTRIC POWER COMPANY;
CENTRAL POWER & LIGHT COMPANY; WEST
TEXAS UTILITIES COMPANY; PUBLIC SERVICE
COMPANY OF OKLAHOMA; APPALACHIAN
POWER CO.; COLUMBUS SOUTHERN POWER
COMPANY; INDIANA MICHIGAN POWER COMPANY;
KENTUCKY POWER CO.; KINGSPORT POWER CO.;
OHIO POWER COMPANY; WHEELING POWER CO.;
AEP COMMUNICATIONS, LLC; C3 COMMUNICATIONS,
INC.; DONALD M. CLEMENTS, JR.; PETE THOMAS;
DOES 1-25; CENTRAL AND SOUTH WEST CORPORATION,

                                           Defendants-Appellees.

---

Appeal from the United States District Court for
the Eastern District of Texas
(USDC No. 2:00-CV-207)

---

September 20, 2002

Before REAVLEY, BARKSDALE and CLEMENT, Circuit Judges.

REAVLEY, Circuit Judge:[*]

The narrow issue presented is whether defendants' alleged misuse of easements granted by plaintiffs, which resulted in payments from third parties to defendants for the use of a fiber optic network, amounted to the "conversion" of "money" constituting predicate criminal acts which will support a civil action brought by plaintiffs under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68. We essentially agree with the district court's analysis of this question and affirm its dismissal of the complaint.

Plaintiffs (the landowners) do not appeal the dismissal of the federal claim under 42 U.S.C. § 1983. The only remaining federal claim asserted in their complaint is the RICO claim. The landowners argue that the RICO requirement of a pattern of racketeering activity, see 18 U.S.C. § 1962(a), is satisfied because the conduct of the defendants (the electric utilities) alleged in the complaint constitutes criminal conduct included in the list of predicate acts found in § 1961(1). Specifically, the landowners argue that the electric utilities exceeded the scope of the easements the landowners had granted to them when the electric utilities placed fiber optic cables along the easements, creating a fiber optic network, and then sold or leased network capacity to third parties

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for telecommunications. The landowners argue that this alleged conduct constitutes the transportation in interstate commerce of stolen or converted money under 18 U.S.C. § 2314, or the receipt of stolen or converted money under 18 U.S.C. § 2315, both of which are included in the list of RICO predicate acts.

We agree with the district court that the conduct alleged does not fall under § 2314 or § 2313. Section 2314, the National Stolen Property Act, provides:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . Shall be fined under this title or imprisoned not more than ten years, or both.

Section 2315 provides:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more . . . which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken . . . Shall be fined under this title or imprisoned not more than ten years, or both.

Reviewing the district court's judgment on the pleadings de novo, St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir. 1991), and assuming that all allegations in the complaint are true, id., the third parties voluntarily paid the money in issue to the electric utilities. The landowners never had title to or ownership of this money. Any conversion or theft of their property by the electric utilities was the conversion or theft of their real property rights which occurred when the electric utilities allegedly exceeded the scope of the easements the landowners had granted. Easements convey intangible or incorporeal rights to the use of real property.

3

See Tex. Elec. Ry. Co. v. Neale, 252 S.W.2d 451, 454 (Tex. 1952) (describing an easement as "an intangible right"); Hidalgo County v. Pate, 443 S.W.2d 80, 84 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.) (describing an easement as "an incorporeal right of passage over the land of another").

The landowners urge a reading of §§ 2314 and 2315 that we cannot accept. Looking to the language of the statutes, the landowners' intangible property rights were not "transported" in interstate commerce under § 2314, and were not "received" by the electric utilities after being stolen or converted and crossing state lines under § 2315. This is not a case where money was fraudulently obtained and "a mere change of form" occurred when the funds were transported in interstate commerce, as occurred in United States v. Levy, 579 F.2d 1332, 1336 (5th Cir. 1978).[1]

---

[1] In Levy, the defendant essentially stole money from his employer's bank account. These funds had been wired by a lender to the employer account, for the purpose of paying a construction contractor. The defendant stole this money by writing two checks on the employer account and depositing the checks in an account at a bank in another state. Id. at 1333. We held that § 2314 applied even though the checks themselves which were transported in interstate commerce had not been obtained by fraud. We find Levy distinguishable because, for all practical purposes, the money stolen and money transported in interstate commerce were one and the same, even if, as a purely technical matter, the physical checks used to move the funds had not been obtained by fraudulent means. In the pending case, however, plaintiffs' real property rights on the one hand, and the monies paid by third parties to the electric utilities on the other hand, cannot be treated as one and the same for all practical purposes. Further, whether the checks at issue in Levy are considered "money" or "securities," see id. at 1335 n.2, both money and securities are covered by the statute, and Levy and cases cited therein do not present the issue raised in the pending case, namely whether the defendants' conduct is covered by the statute where money is transported in interstate commerce but is allegedly derived from the conversion of real property rights that are not, for the reasons discussed below, covered by the statute.

Section 2314 only applies to "goods, wares, merchandise, securities or money."

Section 2315 contains essentially the same language. This language is not, in our view,

expansive enough to include the easement rights allegedly converted in the pending case.

Real property and estates or rights in real property do not fall within the definition of

"goods, wares, merchandise, securities or money." In construing § 2314, we have noted a

standard dictionary definition of "goods, wares, and merchandise" which describes the

term as referring to personal property as opposed to real property. United States v. Smith,

686 F.2d 234, 240 (5th Cir. 1982). We further noted that "an incorporeal, intangible right

or privilege to engage in or to authorize certain activity is not generally considered to be

goods, wares, or merchandise." Id. In addition, we noted that the general dictionary

definition of the term "stolen, converted, or taken by fraud" in § 2314 "implicates the

removal or taking of a tangible item that is owned by or in the possession of someone

else." Id. at 242.[2]

By this reasoning, and recognizing that criminal statutes must be strictly construed,

Smith, 686 F.2d at 239, we concluded in Smith that the distribution of works in violation

of a copyright owner's exclusive distribution rights was not covered by §2314. Id. at

---

[2] See also Dowling v. United States, 473 U.S. 207, 216 (1985) (noting that prior cases "prosecuted under § 2314 have always involved physical 'goods, wares, [or] merchandise' that have themselves been 'stolen, converted or taken by fraud'" under the terms of the statute, and that "by requiring that the 'goods, wares, [or] merchandise' be 'the same' as those 'stolen, converted or taken by fraud,' the provision seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods.").

5

244. Employing the same reasoning, we conclude that the easement rights in the pending case—intangible rights to the use of real property—allegedly misused by the electric utilities do not fall within the ambit of §§ 2314 and 2315.

We finally note that while the briefs include considerable argument on the underlying state law question of whether the electric utilities exceeded the scope of the easements granted by the landowners, we do not reach this issue. Because there were no predicate criminals act that will support a RICO civil action, the federal RICO claim was properly dismissed, and the district court did not abuse its discretion in dismissing the remaining supplemental state law claims without prejudice.

AFFIRMED.